UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCRETIA NORWOOD as General
Guardian for J.R.J., a minor,

    Plaintiff,

v.

WALLED LAKE CONSOLIDATED
SCHOOLS,

    Defendant.

Case No. 24-cv-
Hon.

| |  |
|---|---|
| ERIC STEMPIEN (P58703)<br>MALLORIE M. BLAYLOCK (P84331)<br>STEMPIEN LAW, PLLC<br>Attorneys for Plaintiff<br>38701 Seven Mile Road, Suite 445<br>Livonia, MI 48152<br>P/F: 734-744-7002<br>eric@stempien.com<br>mallorie@stempien.com | |

**COMPLAINT AND JURY DEMAND**

Plaintiff, LUCRETIA NORWOOD as General Guardian for J.R.J., a minor, by and through her attorneys, Stempien Law, PLLC, hereby complains against Defendant, Walled Lake Consolidated Schools, and in support thereof states:

1. Plaintiff, Lucretia Norwood, ("Plaintiff" or "Ms. Norwood") and J.R.J. ("Plaintiff's minor" or "J.R.J.") are residents of the City of Wixom, Oakland County, Michigan.

1

2. Defendant Walled Lake Consolidated Schools ("WLCS") is a governmental entity duly authorized to operate as a public school district in Oakland County, Michigan.

3. WLCS has administrative offices located at 850 Ladd Road, Building D, Walled Lake, Michigan 48390.

4. Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful discrimination due to J.R.J.'s race and sexual orientation, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.* (Title VII) and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2102, *et seq*.

5. The events giving rise to this action occurred within the Eastern District of Michigan.

6. Jurisdiction is vested with this Court pursuant to 28 USC §1331 and 28 USC §1367.

7. Venue is proper in this District pursuant to 28 USC §1391(b), (c) and (d).

## COMMON ALLEGATIONS

8. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if the same were fully incorporated herein and further states:

9. In or about late-August of 2022, J.R.J. began attending Sarah G. Banks Middle School (the "School"), in WLCS, as a seventh-grade student.

10. Sarah G. Banks Middle School's staff's, administrators', faculty's, and students' race is overwhelmingly white.

11. J.R.J.'s race is African-American.

12. J.R.J.'s sexual orientation is gay.

13. Between August 2022 and January 3, 2024, white students bullied J.R.J. for being African-American and gay.

14. Between August 2022 and January 3, 2024, African-American students bullied J.R.J. for being gay.

15. Between August 2022 and January 3, 2024, J.R.J. was relentlessly bullied and was called derogatory, hate-motivated names by his classmates including, but not limited to n****r, fag, faggot, d*** sucker, blackie, monkey, gay boy, freak boy, and freak.

16. Between August 2022 and January 3, 2024, J.R.J. was bullied for his African American bodily features, including for the size of his features and style of hair.

17. Between August 2022 and January 3, 2024, J.R.J. was bullied for wearing make up to school and students pretended to be surprised that J.R.J. is male.

18. Between August 2022 and January 3, 2024, J.R.J. was barked at like a dog while at school.

3

19. J.R.J. was bullied and harassed in class, in the hallways, at lunch, and at extracurricular activities such as football games, and on the school bus for his race and sexual orientation.

20. The most extreme bullying and harassment of J.R.J. came from D.C., L.K., B.C., and J.

21. In or about the middle of the 2022-2023 school year, J.R.J. reported to the School's counselor, Kerry McBride ("Counselor McBride"), in Counselor McBride's office that J called him "a faggot," that B.C. called him "the n-word," and that J, B.C., M.B., and A, were "picking on [him]" and said "you're a faggot" to J.R.J.

22. Counselor McBride told J.R.J. that she would 'talk to them.'

23. Counselor McBride never followed up with J.R.J. and the harassment and bullying continued.

24. Approximately one month after J.R.J. first reported the bullying and harassment to Counselor McBride, he reported to Counselor McBride for a second time that the harassment and bullying was still occurring.

25. The bullying and harassment continued after J.R.J. reported it for a second time.

26. J.R.J. lost hope that Counselor McBride would help him, so he stopped reporting the bullying and harassment.

4

27. WLCS teachers, staff, and lunch monitors knew J.R.J. was being harassed and bullied.

28. WLCS teachers, staff, and lunch monitors knew which students were harassing and bullying J.R.J.

29. J.R.J.'s bullies and harassers did not face any disciplinary action for their treatment of J.R.J.

30. WLCS permitted its students to habitually harass and discriminate against J.R.J. the entire time he was enrolled as a student at the School.

31. WLCS staff and/or administrators discriminated against and harassed J.R.J. for his sexual orientation.

32. The School's Counseling Secretary, Sinah Kostik, ("Secretary Kostik") called Plaintiff to complain that J.R.J. was wearing feminine clothing at School.

33. Upon information and belief, Secretary Kostik does not call female students' parents to complain about their daughters wearing feminine clothing at School.

34. Secretary Kostik called Plaintiff to complain that J.R.J. was wearing makeup at School.

35. Upon information and belief, Secretary Kostik does not call female students' parents to complain about their daughters wearing makeup at School.

36. J.R.J. would go home early from school because of the bullying.

5

37. J.R.J. would tell his friends, Plaintiff, and the School that he wanted to go home from school early because he was feeling ill.

38. J.R.J. was absent from School a total of (17) days between the start of the 2023-2024 school year in early-September 2023 and January 3, 2024.

39. In or about December 2023, Plaintiff called the School to notify it that J.R.J. would not be attending school that day due to illness, which was confirmed by his physician to be contagious.

40. Secretary Kostik told Plaintiff that she must obtain a doctor's note, or J.R.J. would be charged with truancy.

41. The School's attendance policy in effect at that time provided that students with (20) or more unexcused absences would be referred to the Oakland County Truancy Office.

42. Secretary Kostik's truancy threat was made in violation of school policy.

43. Upon information and belief, Secretary Kostik does not threaten white students' parents with truancy charges when their parents call in to excuse them from school.

44. Upon information and belief, Secretary Kostik does not threaten heterosexual students' parents with truancy charges when their parents call in to excuse them from school.

6

45. Upon information and belief, Secretary Kostik does not threaten white and heterosexual students' parents with truancy charges when the student does not have (20) or more unexcused absences.

46. In or about December 2023, WLCS initiated truancy proceedings against J.R.J.

47. Upon information and belief, WLCS does not initiate truancy proceedings against white students or heterosexual students who do not have (20) or more unexcused absences.

48. In or about December 2023, a truancy hearing was set by WLCS to occur on January 19, 2024.

49. During the 2023-2024 school year, J.R.J., D.C., L.K., and B.C. had third-hour science class together.

50. In the fall of 2023, J.R.J. told the third-hour science teacher that he was having issues with L.K. calling him names.

51. In response to J.R.J. reporting L.K.'s bullying to the science teacher, the science teacher sat J.R.J. and L.K. next to each other.

52. The science teacher punished J.R.J. for reporting the bullying to her.

53. The science teacher intentionally put J.R.J. in a situation where she knew or had reason to know that J.R.J. would be further bullied and harassed.

54. Upon information and belief, the science teacher would have taken corrective action against L.K., if J.R.J. was white and heterosexual.

7

55. Upon information and belief, the science teacher would have referred J.R.J.'s complaints to Principal Michelle Kalhorn ("Principal Kalhorn")., Vice Principal Smith, and/or Counselor McBride, if J.R.J. was white and heterosexual.

56. On January 3, 2024, L.K. called J.R.J. a "n****r."

57. On January 3, 2024, in third-hour science class, D.C., L.K., and B.C. were talking amongst each other about J.R.J. while J.R.J. was sitting at his desk talking with a friend, C.B., about his new haircut.

58. D.C., with L.K. and B.C. in toe, approached J.R.J. and told J.R.J. that he should not have cut his hair because he has a large forehead.

59. D.C. then asked J.R.J., 'if you were going to bring a gun to school, would you tell me?'

60. J.R.J. responded, "no. Why would I bring a gun to school!?"

61. D.C. then asked J.R.J., "who would you shoot if you brought a gun to school?"

62. D.C. then stated, "I would shoot you because you're black."

63. B.C. approached, joined in on the bullying, and stated, "if that was me, I'd go tell the teacher," in an apparent nudge of encouragement to D.C. to berate J.R.J. until he specifically named someone to shoot.

64. J.R.J. then said to D.C., "I'd probably shoot you because why [are] you over here?" hoping that an answer would satisfy the bullies and cause them to disburse back to their seats.

65. The bullies then rushed over to their teacher to 'tell on' J.R.J.

66. At the end of class, L.K. approached J.R.J. and exclaimed, 'she [the science teacher] knows that you threatened to shoot up the school.'

67. During fourth hour, J.R.J. was hailed into the School's office where he was interrogated by Counselor McBride and Vice Principal, Kelly Smith ("Vice Principal Smith").

68. The School searched J.R.J.'s locker and purse but, of course, did not find any guns or weapons.

69. For the next few hours, J.R.J. sat alone in a room, segregated.

70. J.R.J. was then hailed back into the office with Vice Principal Smith and Principal Kalhorn.

71. J.R.J. told Vice Principal Smith, Principal Kalhorn, and Counselor McBride that the students who said J.R.J. was going to 'shoot up the school' have been harassing him and that D.C. threatened to shoot J.R.J.

72. Vice Principal Smith and Counselor McBride told J.R.J. 'that's a big reach' and 'you can't go around saying you're going to shoot people.'

9

73. Vice Principal Smith and Counselor McBride did not, however, pay any mind to J.R.J. reporting to them that D.C. said he was going to shoot J.R.J., nor did Counselor McBride speak up despite having knowledge of J.R.J. reporting this harassment, bullying, and discrimination to her twice previously.

74. WLCS sided with J.R.J.'s bullies because they are white, heterosexual, and all had the same story, of course.

75. J.R.J. sat in the school's attendance office for the remainder of the school day, was released, and took the bus home from school.

76. Upon information and belief, WLCS would not have allowed J.R.J. to take the bus home from school if it had any reason to believe that J.R.J. posed any threat to WLCS staff or students.

77. Principal Kalhorn called Plaintiff and told her that the three minor students said that J.R.J. said that if he was going to bring a gun to school, he would shoot those three students, then shoot up the school.

78. Principal Kalhorn told Plaintiff that J.R.J. was being suspended for (5) days.

79. D.C. was not disciplined for stating that he was going to shoot J.R.J. "because he is black."

80. L.K. was not disciplined for calling J.R.J. a "n****r."

81. D.C.'s, L.K.'s, and B.C.'s parents wanted the police to be involved, based on their children's false representations that J.R.J. said he was going to shoot up the school and shoot their children first.

82. Principal Kalhorn advised Plaintiff that J.R.J. could return to school on January 10, 2024.

83. Principal Kalhorn, however, advised the Wixom Police Department's Detective Sgt. Caldwell that J.R.J. was suspended pending an expulsion hearing with the WLCS District Superintendent.

84. L.K. changed his version of the January 3, 2024 events twice during his initial interview with Detective Sgt. Caldwell.

85. During B.C.'s initial interview with Detective Sgt. Caldwell, B.C. stated a series of quotes from the incident that do not correspond with what any of the other minor children alleged.

86. B.C. admitted to Detective Sgt. Caldwell that WLCS has never spoken to B.C. about bullying J.R.J.; and that he heard his friend call J.R.J. a "faggot" on the bus.

87. During D.C.'s initial interview with Detective Sgt. Caldwell, D.C. backed off his prior version of the January 3, 2024 events and ultimately claimed that he does not remember what J.R.J. said.

88. C.B., the classmate that J.R.J. was sitting in class with on January 3, 2024 at the time he was approached by the three bullies, told Detective Sgt. Caldwell that she was at the table when J.R.J. was approached; she heard D.C. ask J.R.J., "if you were going to shoot up the school, who would it be?"; that J.R.J. responded by saying, "Why would you say that? That is wrong. Why would you say that?"; and that B.C. then walked over and said "ooh, you guys are talking about shootings. I'm telling the teacher."

89. Detective Sgt. Caldwell asked C.B. who started the conversation regarding a shooting at the school and C.B. replied "[D.C.]. It was [D.C.]… "he asked [J.R.J.], 'if you were to shoot up the school who would it be?; and [J.R.J.] responded, 'Why would you say that? That's weird.'

90. C.B. further told Detective Sgt. Caldwell that L.K. spoke to C.B. after the incident and L.K. told C.B. that it was just a misunderstanding and they misheard him; that L.K. would not tell her exactly what he said that was misunderstood; and that L.K. was worried about something he said at the school hearing about the incident.

91. C.B. told Detective Sgt. Caldwell that she was surprised J.R.J. was suspended and D.C. was still in school "because [D.C.] was the one who asked the question and [J.R.J.] said that was a stupid question. He didn't answer it like a lot of people would have."

12

92. On January 4, 2024, WLCS superintendent, Dr. Michael Lonze ("Superintendent Lonze"), informed Plaintiff that an expulsion hearing was scheduled by WLCS to occur on January 8, 2024.

93. On or about January 5, 2024, D.C. told A.H. in math class, that "[L.K.] took it really far" when referencing L.K. telling their teacher that J.R.J. said he was going to shoot up the school.

94. On January 8, 2024, A.H. was approached by D.C. at school and D.C. told A.H. what happened on January 3, 2024. D.C.'s series of events was the series of event J.R.J. had told her previously and D.C. told A.H. that "[B.C.] blew it way out of proportion."

95. WLCS failed to interview A.H.

96. WLCS knew or had reason to know that A.H. would corroborate J.R.J.'s statements.

97. Upon information and belief, WLCS would have interviewed witnesses for J.R.J. if J.R.J. was not African American.

98. Upon information and belief, WLCS would have interviewed witnesses for J.R.J. if J.R.J. was not gay.

99. Upon information and belief, WLCS would have interviewed witnesses for J.R.J. if J.R.J's bullies were not white and heterosexual.

100. On January 8, 2024, WLCS cancelled the expulsion hearing when Plaintiff and J.R.J. presented for the hearing with retained counsel and refused to speak with WLCS without their counsel, despite WLCS requesting Plaintiff and J.R.J. do so.

101. WLCS re-scheduled the expulsion hearing to occur on January 18, 2024 and barred J.R.J. from returning to classes until after the hearing occurred, despite the fact that J.R.J. was only to be suspended until January 10, 2024.

102. WLCS re-scheduled the expulsion hearing notwithstanding the fact that WLCS initiated truancy proceedings against J.R.J. whilst simultaneously banning J.R.J. from attending school.

103. On or about January 10, 2024, Sgt. Caldwell advised Plaintiff that J.R.J. is not a person of interest, he does not believe that J.R.J. is 'the culprit,' he does not believe that J.R.J. started the conversation about shooting students at school, he needed to refute the other students' statements to prove that J.R.J. was wrongly accused, and that J.R.J.'s bullies claimed that they were friends with J.R.J. and denied ever bullying him.

104. On January 18, 2024, an expulsion hearing was held.

105. During the expulsion hearing, J.R.J. re-reported – in great detail – the bullying and harassment he had been the victim of the entire time he was a student at the school.

106. During the expulsion hearing, WLCS offered to place J.R.J. into online classes, but did not indicate that it would take any corrective action to stop the bullying, harassment, and discrimination.

107. During the expulsion hearing, J.R.J. made it clear that he wants to return to in-person schooling, but wanted to transfer to Geisler Middle School because of the bullying, discrimination, and harassment at Sarah G. Banks Middle School.

108. During the expulsion hearing, it became clear to Plaintiff that WLCS sought to sweep its discrimination of J.R.J. under the rug.

109. During the expulsion hearing, WLCS cancelled the truancy hearing set for January 19, 2024.

110. At the end of the expulsion hearing, WLCS opined that the days J.R.J. was suspended "won't count" and WLCS requested (24) hours to determine if it was going to expel J.R.J.

111. On January 19, 2024, WLCS decided that "There will be no further discipline for [J.R.J.]. He is able to return to Banks Middle School on Monday [January 22, 2024]."

112. J.R.J. transferred to Geisler Middle School because he did not want to be bullied, harassed, or discriminated against anymore.

15

113. It is common knowledge among African American WLCS students that 'the black kids switch to Geisler' because of racially-motivated bullying at Sarah G. Banks Middle School.

114. Upon information and belief, minors P, E, L, and S also transferred to Geisler Middle School from Sarah G. Banks Middle School as a direct result of them also being victims of racially motivated bullying and harassment.

115. Minors P, E, L, and S are African American.

116. J.R.J.'s first day of school at Geisler Middle School was February 1, 2024.

117. As a direct and proximate result of WLCS' utterly failing J.R.J., and WLCS' pretext actions and inaction to expel J.R.J., he was forced to miss an entire month of school during the time in his young life where his education is of the upmost importance.

118. J.R.J.'s academic performance significantly declined as he continued to be bullied at Sarah G. Banks Middle School.

119. By the time J.R.J. transferred to Geisler, he had become severely emotionally withdrawn.

120. J.R.J. suffered severe mental anguish and extreme emotional distress as a result of WLCS' actions and inaction and, as a result, J.R.J. is now attends therapy.

121. On a date after January 19, 2024, Vice Principal Smith called A.H. into her office, asked A.H. if she ever heard others making fun of J.R.J., and told A.H. that J.R.J. switched schools.

122. A.H. told Vice Principal Smith what J.R.J. had already reported to Vice Principal Smith directly and repeatedly reported to the School since the prior school year.

123. Upon Vice Principal Smith obtaining corroboration of J.R.J.'s complaints and statements, WLCS still took no disciplinary action against J.R.J.'s bullies.

124. Presently, there is a rumor at Sarah G. Banks Middle School that J.R.J. 'went to jail for crack.'

125. J.R.J. is still being bullied, harassed, and discriminated against by the School's students, even though he does not attend Sarah G. Banks Middle School anymore.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT (RACE DISCRIMINATION)

126. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

127. Title VII of the Civil Rights Act, 42 U.S.C. § 2000d, provides that, "[n]o person in the United States shall, on the ground of race… be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

128. WLCS operates programs and activities and receives federal financial assistance.

129. J.R.J.'s race, African-American, was a significant motiving factor in Defendant excluding J.R.J. from participation in, denying him the benefits of, and subjecting him to discrimination, as fully explained herein.

130. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff's minor has suffered damages, including but not limited to: lost past and future academic opportunities and benefits, loss of potential earning capacity, attorney fees, and severe mental anguish and emotional distress.

## COUNT II
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## (RACE DISCRIMINATION)

131. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

132. The ELCRA, § 402(a) provides that "[a]n educational institution shall not … [d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of… race…"

133. J.R.J.'s race, African-American, was a significant motivating factor in Defendant discriminating against J.R.J. in the full utilization of, and benefit from, WLCS' institution and the services, activities, and programs provided by WLCS, as fully explained herein.

134. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff's minor has suffered damages, including but not limited to: lost past and future academic opportunities and benefits, loss of potential earning capacity, attorney fees and severe mental anguish and emotional distress.

## COUNT III
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## (SEXUAL ORIENTATION DISCRIMINATION)

135. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

136. The ELCRA, § 402(a) provides that "[a]n educational institution shall not … [d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of… sexual orientation…"

137. WLCS is an educational institution.

138. Sarah G. Banks Middle School is an educational institution.

139. J.R.J.'s sexual orientation, gay, was a significant motivating factor in Defendant discriminating against J.R.J. in the full utilization of or benefit from WLCS and

Sarah G. Banks Middle School, and the services, activities, or programs provided by WLCS and Sarah G. Banks Middle School, as fully explained herein.

140. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff's minor has suffered damages, including but not limited to lost past and future academic opportunities and benefits, loss of potential earning capacity, attorney fees, and severe mental anguish and emotional distress.

WHEREFORE, Plaintiff prays that this Honorable Court enter a judgment in Plaintiff's favor against Defendant in an amount that this Court deems fair and just, plus costs, interest and attorney fees.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of the within cause.

> Respectfully submitted,
>
> STEMPIEN LAW, PLLC
>
> */s/ Mallorie M. Blaylock*
> Mallorie M. Blaylock (P84331)
> Attorney for Plaintiff
> 38701 Seven Mile Road, Suite 445
> Livonia, MI 48152

Dated: May 22, 2024